UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL S.[1],

                Plaintiff,

v.                                              CASE # 20-cv-00104

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEWIS L. SCHWARTZ, PLLC<br>  Counsel for Plaintiff<br>1231 Delaware Ave<br>Suite 103<br>Buffalo, NY 14209 | LEWIS L. SCHWARTZ, ESQ. |
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | BRANDI C. SMITH, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KEEYA MARIE JEFFREY, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born on April 2, 1976 and has a high school education. (Tr. 240, 244). Generally, plaintiff's alleged disability consists of irritable bowel syndrome (IBS). (Tr. 243). His alleged onset date of disability is November 26, 2012 and the date last insured was December 31, 2017. (Tr. 240).

   B.   Procedural History

On March 3, 2014, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act. (Tr. 214). Plaintiff's application was denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On June 8, 2016, plaintiff appeared before the ALJ, Christine A. Cooke. (Tr. 43-92). On August 30, 2016, ALJ Cooke issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 22-33). The Appeals Council (AC) denied plaintiff's request for review and plaintiff then filed a civil action in this Court seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Tr. 1-6, 1051-1063). Parties agreed to remand the action for further administrative proceedings. (Tr. 1094-1096). On December 11, 2018, the Appeals Council issued an order, vacating ALJ Cooke's decision, remanding the case for further administrative

proceedings, and consolidating the case with subsequently filed Title II and XVI applications filed on November 2, 2017. (Tr. 1097-1103). Plaintiff appeared and testified at another hearing on July 2, 2019, before ALJ Paul Georger and was found not disabled in a September 30, 2019 decision. (Tr. 977-995, 1002-25). Plaintiff then commenced this action.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since November 26, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: irritable bowel syndrome, status post exploratory laparotomy, recurrent incisional hernia, status post multiple surgical repairs, degenerative disc disease of the lumbar spine, status-post March 2017 fusion at the L4-S1 levels. (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), because he is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although the claimant is unable to climb, balance, kneel, crouch, or crawl, he is able to occasionally stoop.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 2, 1976 and was 36 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date of November 26, 2012 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material because using the Medical-Vocational Rules as a framework supports that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 26, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 974-91).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ erred in failing to properly evaluate the treating opinions of Dr. Melgar. Second, the physical RFC determination is not supported by substantial evidence. (Dkt. No. 12 at 1 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

Defendant responded to each of plaintiff's arguments. First, defendant asserts the ALJ properly considered and weighed Dr. Melgar's opinions (Dkt. No. 13 at 7 [Def.'s Mem. of Law]). Second, the ALJ properly assessed plaintiff's RFC. (*Id*. at 17).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be

reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

**A. Primary Care Physician Dr. Luis Melgar**

Plaintiff disputes the ALJ's RFC finding, arguing the ALJ failed to give good reasons for rejecting the opinions of his former primary care treating physician Dr. Melgar. (Dkt. No.12 at 20). On December 30, 2014 Dr. Melgar examined plaintiff and noted he had moderate visible lower midline incisional hernia while sitting. (Tr. 728-729). He diagnosed plaintiff with IBS with ventral hernia and opined, "NO WORK, 100% TOTAL TEMP DISABILITY X 12 MONTHS". (Tr. 729-730). On September 15, 2015, Dr. Melgar and certified physician assistant ("PA-C") Jessica Amborski completed a gastrointestinal questionnaire, citing monthly examinations since November 2012. (Tr. 643-648). They opined that since November 2012:

> Plaintiff had anxiety about IBS symptoms and when they were going to occur and about not being able to work. (Tr. 645). Plaintiff's experience of pain, fatigue, and other symptoms were severe enough to constantly interfere with his attention and concentration. (Tr. 645). Further, plaintiff was incapable of tolerating even low stress and would have a

>     hard time focusing and stress would increase his abdominal symptoms. (Tr. 646). Plaintiff
>     is unable to sit, stand/walk, lift, or carry, would need to alternate positions between sitting
>     and standing/walking every 5-10 minutes, and would also need 10-15 minute long restroom
>     breaks 6-10 times per work day due to his conditions. (Tr. 646-647). Plaintiff would likely
>     be absent more than three times a month as a result of his impairments or treatment. (Tr.
>     647).

On November 25, 2015, Dr. Melgar again found plaintiff was unable to work and had "100% TOTAL TEMP DISABILITY X 12 MONTHS". (Tr. 773). On September 15, 2017, Dr. Melgar completed a drug and alcohol questionnaire and asserted plaintiff's use of marijuana did not contribute to the severity or limiting effects of any of his medical conditions. (Tr. 2070). On November 10, 2017, Dr. Melgar completed another medical source statement and asserted plaintiff could sit for less than 2 hours and stand for less than 2 hours during an 8-hour workday, occasionally lift/carry 10 pounds and frequently lift/carry less than 5 pounds, and would be off-task 11 to 20% of the time. (Tr. 2071). Notably, Dr. Melgar was also contacted by a disability analyst from the Agency in November 2017 for greater details pertaining to his opinions but he returned incomplete paperwork with no additional information specific to limitations or in assessing an RFC. (Tr. 2251-58).

The Regulations require the ALJ to consider the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinion; the consistency of the opinion with the remaining medical evidence; and whether the physician is a specialist. *See* 20 CFR 404.1527(c) and 416.927(c). An ALJ is not required to explicitly go through each and every factor of the Regulation, however ALJ Georger was very thorough in identifying the numerous opinions and citing extensive medical evidence which was inconsistent with Dr. Melgar's significant limitations. (Tr.988-89). *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014). The ALJ provided detailed reasons explaining why the opinions were entitled to reduced weight, many of which plaintiff unsuccessfully challenges.

7

ALJ Georger conscientiously summarized the voluminous longitudinal medical record, including treatment for abdominal and back pain, which was inconsistent with Dr. Melgar's opinions. (Tr. 984-89). The ALJ noted that the medical evidence, including Dr. Melgar's own physical examinations, were inconsistent with the extreme limitations which the doctor imposed. (Tr. 985, 988). *Halloran v. Barnhart*, 362 F.3d at 32 (2d Cir. 2004)(deference to treating source's opinion was not required where treating physician issued opinions that were not consistent with his own treatment notes and other substantial evidence in the record). For example, Dr. Melgar concluded that plaintiff was extremely limited in his ability to sit, stand, walk, lift, and carry, yet an examination from his own office demonstrated plaintiff had normal gait, strength, and range of motion post abdominal surgery. *See* Tr. 763, 985. During an October 2015 examination at Dr. Melgar's office, plaintiff walked with a normal gait, his spine was normal to palpation, he had normal strength, muscle tone, and bulk, and full range of motion in his arms and legs. (Tr. 763, 985). During treatment for his back pain in 2016, plaintiff reported to Dr. Melgar that his abdominal pain was mostly well controlled, and his physical examination was normal. (Tr. 793-95, 985-86).

Further, Dr. Melgar's opinions were inconsistent with observations and findings of other medical providers. The ALJ noted that beginning in November 2012, plaintiff was diagnosed with chronic abdominal pain and throughout 2013 he complained of abdominal pain, but physical examinations were generally normal. (Tr. 464-67, 502, 514, 984). In early 2014, plaintiff appeared to be in severe discomfort, but examination of his abdomen still showed no bulging, visible herniation, and no bruits. (Tr. 637, 985). He underwent exploratory abdominal surgery in August 2014, with CT scans showing no acute pathology of his abdomen or pelvis. (Tr. 818, 985). For the next year, Plaintiff continued to report abdominal pain, but physical examinations were normal.

(Tr. 697-741, 985). Surgery was recommended in May 2015 for repair of an incisional hernia with large mesh and subsequent examinations showed reduced pain. (Tr. 697-741, 855, 985). An October 2015 CT scan of his abdomen was normal, but a post-surgery MRI of his back revealed a very small disc herniation with only mild disc space narrowing. (Tr. 799, 985, 1560-61, 2279). *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ referenced repeated findings by back surgeon Dr. Egnatchik of exaggerated movements on examination with a limping antalgic gait but only a very small disc herniation with mild space narrowing on the MRI. (Tr. 986, 2279, 2505).

The ALJ appropriately discounted the portion of Dr. Melgar's opinion regarding plaintiff's need to use the restroom six to 10 times per day, for 10-15 minutes at a time. (Tr. 647, 989). The ALJ again cited Dr. Melgar's own treatment notes, which did not regularly contain reports of an excess need for restroom breaks. (Tr. 988-89). The ALJ referenced abdominal surgery evidence from 2014 and 2015 but also subsequent intermittent reports of abdominal flare-ups that responded to medications. (Tr. 988-89). Further, the ALJ commented that Dr. Melgar's 2017 opinion did not discuss restroom breaks, and when he was re-contacted to clarify his opinions, he still did not highlight any need for restroom breaks. (Tr. 989). The ALJ expressly explained that he did not include restroom breaks in the RFC because they were unsupported, but he considered plaintiff's abdominal conditions and accounted for them by restricting him to sedentary work as well as significant postural limitations. (Tr. 989). Plaintiff has not shown that an RFC limitation for restroom breaks was warranted, rather, the records he cited show "well-controlled" symptoms and do not reflect complaints of excessive restroom breaks. (Dkt. No. 12 at 24). The ALJ was not required to further explain the length and frequency of restroom breaks in this circumstance. *See*

*Seiler v. Saul*, No. 18-cv-01088F, 2020 WL 1283440, at *4 (W.D.N.Y. Mar. 18, 2020) (rejecting the same argument where "nothing in the record here indicates that plaintiff would require such ready access to a bathroom or frequent bathroom breaks that plaintiff's residual functional capacity would be eroded to a level where plaintiff was unable to work").

ALJ Georger appropriately compared Dr. Melgar's opinions with other opinion evidence in his analysis. In doing so, the ALJ found that Dr. Melgar's opinions were inconsistent with the well-supported opinions of Drs. Fabiano, Kleinerman, Dave, Poss, and Liu. (Tr. 988). Plaintiff takes issue with the opinion from Dr. Dave, asserting it is similar to Dr. Melgar's. (Dkt. No. 12 at 22). Dr. Dave opined that plaintiff had moderate to marked limitations for prolonged standing, walking, bending, twisting, lifting, carrying, pushing, pulling of heavy objects, and prolonged sitting, due to his abdominal and low back problems, but his prognosis was fair. (Tr. 2269). Dr. Dave deferred to Plaintiff's back surgeon for specific lumbar spine restrictions. *Id*. Dr. Dave's opinion specifically deferred to a different treating provider whose examination provided both findings and diagnostic evidence that were inconsistent with Dr. Melgar's extreme limitations. The ALJ was performing his duty to resolve conflicts in the evidence and to weigh all of the available evidence to make an RFC finding that was consistent with the record as a whole.

Plaintiff argues the opinions from Drs. Liu and Poss did not address time off task, and therefore they could not serve as a basis for the ALJ to discount Dr. Melgar's opinion. (Dkt. No. 12 at. 22, Tr. 2071). However, no other medical source found plaintiff would need to be off task. As argued by defendant, plaintiff is mischaracterizing Dr. Melgar's off task opinion as uncontradicted, but it is actually an outlier and inconsistent with the rest of the opinion evidence. *See Morales v. Berryhill*, No. 19 Civ. 1186 (GWG), 2020 WL 5359334, at *11 (S.D.N.Y. Sept. 8, 2020) (the ALJ reasonably discounted a physician's opinion as an "outlier among all the opinions

in the record"). Dr. Poss expressly noted that Dr. Melgar's opinion regarding off task time was not supported by the available medical evidence. (Tr. 1073).

Additionally, the ALJ appropriately contrasted Dr. Melgar's opinions with plaintiff's daily activities. *See* 20 C.F.R. § 404.1527(c)(4) (ALJ considers whether an opinion is consistent with the record as a whole); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113-14 (2d Cir. 2010) (unpublished) (ALJ may reject a treating physician's analysis where that analysis conflicts with a claimant's own testimony about how the claimant's impairments affect the claimant's functional capacity). Since the alleged onset date, plaintiff has reported he was a single father caring for his son, was able to cook, attend to personal hygiene, clean, do laundry, and go shopping weekly. (Tr. 982, 984, 2263, 2267). Although plaintiff argues that the ALJ did not explain which activities were inconsistent, the ALJ's rationale is apparent from plaintiff's report of activities that necessarily conflicted with Dr. Melgar's opinion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . mention[ ] every item of testimony presented to him or explain[ ] why he considered particular evidence unpersuasive").

Thus, after considering the factors under the treating physician rule in 20 C.F.R. §§ 404.1527(c) and 416.927(c), ALJ Georger exhaustively set forth his reasons for the weight assigned to the treating physician Dr. Melgar. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

### B.  Physical RFC

Plaintiff next argues the ALJ's physical RFC determination was not supported by substantial evidence because the ALJ improperly relied on other opinion evidence over the opinions from treating source Dr. Melgar. (Dkt. No. 12 at 26). As related to his previous argument, plaintiff claims the ALJ failed to reconcile the conflict between the RFC and Dr. Dave's opinion.

(Dkt. No. 12 at 27). ALJ Georger however expressly discussed the moderate to marked limitations for prolonged sitting and the RFC for sedentary work. (Tr. 2269, 987). In the decision, he noted that it was somewhat non-specific, but the limitation "was carefully considered in balance with the overall evidence when devising the [RFC], including the restriction of sitting for only six hours total in an eight-hour workday." (Tr. 987). The ALJ noted that the sedentary restriction was fully consistent with the opinion of Dr. Poss, who had the opportunity to review Dr. Dave's opinion along with the other medical evidence. (Tr. 987, 1067, 1074-75). As discussed above, Dr. Dave deferred to Dr. Egnatchik's assessment of plaintiff's low back limitations. (Tr. 986, 2279, 2505). Therefore, the ALJ did not "ignore" Dr. Dave's prolonged sitting limitation, as plaintiff suggests but rather considered it with the record as a whole, including the opinion of Dr. Poss and the findings of Dr. Egnatchik. Tr. 986. *See Veino v. Barnhart,* 312 F.3d 588 (2d Cir. 2002) (the ALJ may reject portions of a medical opinion not supported by objective evidence and accept the portions that are supported by substantial evidence).

Plaintiff also argues the ALJ should not have given significant weight to the opinion of consultative examiner Dr. Liu because it was prior to plaintiff's back impairment and surgeries. (Dkt. No. 12 at 27). Indeed, the ALJ noted the timing of Dr. Liu's opinion and found that other evidence indicated that Plaintiff was more physically limited than Dr. Liu opined. (Tr. 987). Clearly the ALJ did not rely solely on this opinion to assess the RFC as greater limitations were found.

Plaintiff additionally alleges the ALJ erred by relying on the opinion from the non-examining review physician, Dr. Poss, simply because it was inconsistent with the treating opinions in the record. (Dkt. No. 12 at 29). Dr. Poss reviewed plaintiff's medical records in February 2018, including treatment records from Dr. Melgar, surgical records, and the

examinations from Drs. Dave and Liu. (Tr. 1072-75). The ALJ found that Dr. Poss's opinion was entitled to very significant weight due to his expertise and the relative consistency of his opinion with the medical evidence of record, including plaintiff's good response to treatment. (Tr. 987). The Court has repeatedly disagreed with plaintiff's argument that a non-examining physician's opinion is not entitled to more weight than a treating physician's opinion. *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Allen v. Comm'r*, 351 F. Supp. 3d 327, 335 (W.D.N.Y. 2018) (recognizing an ALJ is entitled to rely on the opinions of non-examining State agency medical consultants because they are "deemed to be qualified experts in the field of social security disability," and an ALJ may assign greater weight to the opinion of a non-examining source "when it is better supported by the record").

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is

**GRANTED**.

Dated: June 1, 2021  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge